IN THE UNITED STATES BANKRUPTCY COURT
FOR THE Eastern District of Pennsylvania
PHILADELPHIA DIVISION

IN RE: CHARLES GRESHAM

CASE NO. 2-18-BK-11676

CLAIM: 1

## NOTICE OF CHANGE OF ADDRESS BY A CREDITOR

COMES NOW, SOUTHERN AUTO FINANCE COMPANY hereby request the Trustee notice and payment address on its claim for the above mentioned case be changed from the following address:

**SOUTHERN AUTO FINANCE COMPANY**
**6700 N ANDREWS AVE**
**STE 500**
**FT LAUDERDALE FL 33309-2204**

To the new address below:

**SOUTHERN AUTO FINANCE COMPANY c/o PERITUS PORTFOLIO SERVICES II, LLC**
**P.O. Box 141419**
**Irving TX 75014-1419**

This address change pertains to Trustee payments and all other correspondences for this claim filed by the Creditor.

/s/Georgina Yarbrough                                            Date: 9/14/2018
Georgina Yarbrough
Telephone: (866) 831-5954

# LIMITED POWER OF ATTORNEY

KNOW ALL PEOPLE BY THESE PRESENTS:

The undersigned hereby constitutes and appoints Peritus Portfolio Services II LLC ("Agent") as its limited true and lawful agent and attorney in fact to act in its name and stead or on its behalf with authority to do only the following acts with respect to Loan Agreements and related rights which Agent services for Southern Auto Finance Company, LLC (Client) (the Loan Agreements and related rights are referred to herein as the "Property"):

After the date hereof:

1. Agent can receive, endorse and collect all payments made payable to or owed to Southern Auto Finance Company, LLC in connection with the Property, including, but not limited to, any payments received from a Chapter 7 and Chapter 13 bankruptcy trustee.

2. Agent can take any and all actions necessary to perform such Bankruptcy Claim services for Client, including preparation and filing of claims, in Bankruptcy cases pursuant to a contract for services between Client and Peritus Portfolio Services II LLC.

3. Agent can enforce, release, modify and transfer the rights and interests granted to Principal with respect to the Property, which on their face give Principal rights regarding the Property, including, but not limited to, rights with respect to insurance policies, motor vehicles, certificate of title and motor vehicle liens.

4. Agent can pursue litigation in connection with the services of bankrupt accounts pursuant to a contract for services between Client and Peritus Portfolio Services II LLC.

This power of attorney is made on August 23, 2018

Client: Southern Auto Finance Co, LLC

By: [signature] CFO
    Position

STATE OF Florida )
                 ) ss.
COUNTY OF Broward )

I, Cherisse E. Li, a Notary Public in and for said County, in said State, do hereby certify that the person personally know to me to be the same person whose name is subscribed to the foregoing instrument has appeared before me this day in person and acknowledged that he/she signed and delivered such instrument as his/her free and voluntary act for the uses and purposes therein set forth.
Given under my hand and official seal this 23 day of August, 2018.

Notary Public, State of Florida
Commission Expires 11/20/2020

CHERISSE ELIZABETH LI
MY COMMISSION # GG048830
EXPIRES November 20, 2020

# BANKRUPTCY PROCESSING
# SERVICE AGREEMENT

This Service Agreement (this "Agreement") is made this 10th day of August, 2018 (the "Effective Date"), by and between Southern Auto Finance Company, LLC (SAFCO) with its principal place of business at 6700 N Andrews Ave, Ste 500, Fort Lauderdale, FL 33309 ("Client") and Peritus Portfolio Services II LLC (Peritus) with its principal place of business at 433 E Las Colinas Blvd, Suite 475, Irving, Texas 75039.

## 1. DEFINITIONS

The following terms shall have the meanings set forth below:

Account: An obligation, for which the Client has received notice that the Debtor has or may file a Bankruptcy Proceeding that is referred to Servicer pursuant to this Agreement.

Affiliate: A Person directly or indirectly controlling or controlled by, or under direct or indirect common control with, any other Person.

Agreement: This Bankruptcy Services Agreement, as amended from time to time, including all schedules and amendments hereto.

Bankruptcy Code: The United States Bankruptcy Code or rules promulgated thereunder, as amended.

Bankruptcy Court: With respect to each Debtor, the United States Bankruptcy Court or any other court with jurisdiction over the bankruptcy or insolvency proceedings of such Debtor.

Business Day: Any day other than (i) a Saturday or Sunday or (ii) holidays observed by the Federal Reserve.

Chapter 7 Account: An Account that is subject to a proceeding under Chapter 7 of the Bankruptcy Code.

Chapter 11 Account: An Account that is subject to a proceeding under Chapter 11 of the Bankruptcy Code.

Chapter 12 Account: An Account that is subject to a proceeding under Chapter 12 of the Bankruptcy Code.

Chapter 13 Account: An Account that is subject to a proceeding under Chapter 13 of the Bankruptcy Code.

Client Policies and Standards: Those Client policies and performance standards provided to Servicer from time to time. Client Policies and Standards includes without limitation Client's Agency Network Handbook, as amended from time to time provided to Servicer either directly or otherwise made available to Servicer. Such Client Policies and Standards are hereby

incorporated into the Agreement by reference, and may be amended by Client at its sole discretion.

Confidential Information:
- A. The name, address, credit card, bank account numbers and/or any other nonpublic personal information (as defined in the Gramm-Leach-Bliley Act, 15 U.S.C. §6801 et seq., and the regulations thereunder) of Debtors, or any and all other tangible and intangible information about Debtors or accounts provided to or obtained by Servicer in connection with the performance of its duties under this Agreement;
- B. Any financial information and other information, including without limitation customer lists, trade secrets, portfolio performance data, analyses, reports, routines, products, services, compilations, techniques, concepts, inventions, processes, finances, marketing, methods, ideas, software and documentation concerning the business and affairs of Client;
- C. All data and information belonging to Client which may be delivered to, generated by, or otherwise used or processed by or on behalf of Servicer or may otherwise come into the possession or control of Servicer;
- D. Personal data (as defined under applicable laws); and
- E. Any information, reports, copies, excerpts, summaries, notes or analyses derived from, incorporating, or based upon the Confidential Information described above.

Debtor: A Person on an Account who has filed bankruptcy.

Dismissed Account: An Account that was subject to a Bankruptcy Proceeding and subsequently dismissed.

Person: Any legal or natural person, including any individual, corporation, partnership, joint venture, association, joint stock company, trust or unincorporated organization, or any federal, state or other governmental authority or any agency or political subdivision thereof.

Placement File: An electronic file sent by Client to Servicer containing data pertaining to the Accounts and Servicer's Services.

Plan: A plan filed by any Debtor in a Bankruptcy Proceeding under any chapter of the Bankruptcy Code.

Proof of Claim or "POC": With respect to each Account in bankruptcy, a proof of claim filed or to be filed in the Bankruptcy Proceeding of any Debtor.

Reaffirmation Agreement: An agreement that has been approved by the Bankruptcy Court and complies with Section 524(c) of the Bankruptcy Code.

Requirements of Law: All applicable federal, state and local laws, established case law in the jurisdictions in which Servicer performs Services (as defined herein), the rules, orders and regulations, including, without limitation, the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure, local rules of any

applicable Federal Bankruptcy Court, Fair Debt Collection Practices Act, the Fair Credit Reporting Act, the Telephone Consumer Protection Act, the Gramm-Leach-Bliley Act, the Dodd-Frank Wall Street Reform and Consumer Protection Act, the Service members Civil Relief Act, Fair and Accurate Credit Transactions Act of 2003 ("FACTA"), any rules promulgated by the Consumer Financial Protection Bureau, and any rules of professional conduct applicable to the jurisdictions in which Servicer performs Services.

Returned Accounts: Accounts described in Section 4.04 hereof.

Secured Account: An Account as determined by the Bankruptcy Court or Trustee to be a Secured Account. The term "Secured Account" may be used in conjunction with the terms "Titled," "Untitled," "Chapter 7 Account," or "Chapter 13 Account" (as such terms are defined herein) – *e.g.*, "Secured Titled Chapter 7 Accounts" or "Secured Titled Chapter 13 Accounts."

Services: Actions taken by Servicer in connection with the Accounts as described.

Servicing Expenses: Third-Party costs related to automobile repossession and sale, bank and other service charges related to payment collections, including attorney fees and court costs, title transfer fees, and transfer of claim fees.

Trustee: With respect to each Account in bankruptcy, the trustee in the related Bankruptcy Proceeding.

Unsecured Accounts: An Account which is not a Secured Account. The term "Unsecured Account" may be used in conjunction with the terms "Untitled," "Chapter 7 Account," or "Chapter 13 Account" (as such terms are defined herein) – *e.g.*, "Unsecured Titled Chapter 7 Accounts" or "Unsecured Titled Chapter 13 Accounts."

## 2. RECITALS

Peritus Portfolio Services II LLC provides Comprehensive Account Collection Services, for Accounts under the protection of Chapters 7, 11, 12 and 13 of the US Bankruptcy Code. Services include: Active account Monitoring, processing of Proof of Claims (POC), managing Plans, Negotiating and obtaining approval of Reaffirmation Agreements, collections and recovery services, during and post dismissal or discharge, and payment processing for secured and unsecured Bankrupt accounts

Client desires to utilize the Services and Peritus is willing to make the Services available to Client.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

(A) TERM.
    i. This Agreement shall commence as of the Effective Date and shall continue in full force and effect for three (2) years.

ii. Either party may terminate this agreement upon the occurrence of any material breach by the either party, which breach remains uncured thirty (30) days following written notice of such breach, from the non-breaching party.

iii. In addition, either party may terminate for convenience with ninety (90) days written notice.

iv. Upon the expiration or termination, (i) Peritus will cease performing the Services and shall have no continuing obligation to perform the Services after the effective date of the termination; (ii) Client will pay Peritus for those Services completed up to the date of such termination, including the reasonable costs for Peritus to return all vehicles, accounts and other property to Client; (iii) the parties will cooperate to effectuate an efficient transition; and (iv) any and all liabilities accrued prior to the effective date of the termination will survive; (v) Peritus shall promptly return all accounts, and other property in its possession that are the subject of this Agreement to the location specified in writing by Client.

(B) EXCLUSIVITY.
This Agreement shall be exclusive. Client shall not utilize other bankruptcy servicers, or service Auto Secured, bankrupt accounts "in-house during the term of this agreement.

### 3. PERITUS PORTFOLIO SERVICES II, LLC OBLIGATIONS

Marking the appropriate boxes below identifies the specific Services the Client has requested as part of this Agreement.

- X   Monitoring portfolio for new filings, electronic advice to client
- X   Initial Review of Bankruptcy proceedings and plan.
- X   Filling Proof of Claims on Chapter 13 filings.
- X   Completing Reaffirmation agreements on Chapter 7 filings.
- X   Filing of Reaffirmations, upon approval by debtor and bankruptcy court.
- X   Managing litigation including Objections to plans, Relief of Stay, Lift of Stays, and other related bankruptcy litigation.
- X   Monitoring proceeding for dismissals, conversions, modifications and discharge
- X   Account liquidation including:
  - X  Collecting payments from Trustee and Debtors
  - X  Coordinating recovery and remarketing of collateral in the event of voluntary or involuntary repossession

Peritus will comply with all applicable laws, regulations, and ordinances of any governmental authority having jurisdiction over the Services.

4.

## 5. COMPENSATION AND REMITTANCE

Client shall pay Servicer for it performance of Services as set forth:

(A) A Fee of $2,500 for initial set up (the Set-Up Fee). The Set-Up Fee covers Boarding of the Initial placement, the cost of initial Scrubbing and review of the Accounts, Transfer of Claims noticing, mailings to Debtors and Attorneys, and reporting set up.

(B) For each new account placed (after the initial placement) a boarding fee of $12.50.

(C) A Service Fee shall be calculated as follows:
   i. Secured Accounts: Cleared funds collected multiplied by 5.0%.
   ii. Unsecured Accounts: Cleared funds collected multiplied by 5.0%
       Servicer will provide a Remittance Report on a weekly basis for payments received through the previous week. (actual day of remittance report to be agreed upon at the time of Set-Up).

(D) All accounts closed and returned. Other than for reasons of Discharge, Paid in Full, or recalled due to being involved in litigation, or a regulatory inquiry, or action, within the first 12 months of the account being placed for service will be billed at a rate of $20 for each secured account and $10 for each unsecured account.

(E) Servicer will remit to Client the total amount stated on the Remittance report as collected, net of Servicing Fee earned by the Servicer and Servicing Expenses.

(F) Client will provide Servicer a report, no less than weekly of payments received by Client for posting by Servicer. Payments received by client for accounts being serviced by Servicer are subject to the Servicing Fee payable to Servicer

## 6. INDEMNITY

(A) Client shall defend, indemnify and hold Peritus Portfolio Services II LLC from and against any and all claims, expenses (including reasonable attorneys' fees), suits and demands arising out of, based upon, or resulting from any actions taken by Client prior to the assignment of any Debtor account to Peritus, including violation of allegations of wrongful repossession or conversion, any automobile lease or financing arrangement between Client and a third party or the termination thereof, defects in a vehicle's title, mechanical or design defects in the vehicle, or any violation or infringement upon any Client marks used by Peritus in accordance with the terms of this Agreement.

(B) Peritus shall defend, indemnify and hold Client from and against any and all claims, expenses (including reasonable attorneys' fees), suits and demands arising out of, based upon, or resulting from any actions taken by Peritus in the performance of this agreement.

## 7. CONFIDENTIAL INFORMATION

(A) Client and Peritus Portfolio Services II LLC shall each protect and keep confidential all non-public information disclosed by the other party and identified or treated as confidential by such other party, including, without limitation, all information relating to pricing and any other fees under the Agreement ("Confidential Information"), and shall not, except as may be authorized by the disclosing party in writing, disclose any such Confidential Information during the term of this Agreement and for a period of one (1) year following the termination hereof.

by the disclosing party in writing, disclose any such Confidential Information during the term of this Agreement and for a period of one (1) year following the termination hereof.

(B) Peritus Portfolio Services II LLC acknowledges that Client may be required to comply with the Gramm-Leach-Bliley Act (15 U.S.C. §§6801, et seq.) ("G-L-B") and the regulations promulgated thereunder ("G-L-B Regulations"). In consideration for Client's agreement to do business with Peritus, agrees not to disclose or to use nonpublic personal information about Client's customers that Client has provided to Peritus, other than to carry out the purposes for which Client disclosed the information to Peritus. For purposes of this Agreement, "nonpublic personal information" consists of "personally identifiable financial information" and "any list, description, or other grouping of consumers (and publicly available information pertaining to them) that is derived using any personally identifiable financial information that is not publicly available." The restriction set forth herein shall apply during the term and after the termination of this Agreement.

## 8. OWNERSHIP OF CONTENT

Nothing in this Agreement shall affect a transfer of copyright from Peritus to Client or from Client to Peritus. Peritus shall retain all ownership rights, including copyrights, in the content it provides. Client shall retain all ownership rights, including copyrights, in any content it provides. Peritus owns all right, title and interest in and to any information and materials, not provided by Client, collected by Peritus or its subsidiaries, affiliates or contractors relating to the Services.

## 9. MISCELLANEOUS

Except in strict performance of Peritus specific responsibilities expressly authorized by Client pursuant to the power of attorney executed by Client attached as Addendum C, Peritus is not the express, implied, or apparent agent of Client for any purpose whatsoever. Under no circumstances shall Peritus employees or other person(s) performing work for Peritus be considered Client employees, nor shall Peritus represent or give the appearance of any agency authority beyond that specifically granted by this Agreement. No franchise rights or licenses are granted to Peritus or Client to use the other party's name or to otherwise benefit therefrom except as specifically provided in this Agreement.

All notices, demands, or other communications required to be given hereunder shall be given in writing, and shall be personally delivered, sent registered, or certified mail, return receipt requested with postage prepaid, sent by telecopy or e-mail, or sent by commonly recognized overnight courier service to the respective party at the applicable address set forth below. All notices sent by mail shall be deemed effectively given on the third business day following the date of such mailing. All notices personally delivered shall be deemed effectively given on the date of such delivery. All notices sent by telecopy or email shall be deemed received on the date transmitted with electronic confirmation of delivery. All notices sent by recognized overnight delivery shall be deemed effectively given on the date delivered.

If to Peritus Portfolio Services II LLC:    Peritus Portfolio Services II LLC
                                            433 E Las Colinas Blvd
                                            Suite 475
                                            Irving, Texas 75039
                                            Attention: Gary Perdue

<pre>
                              Telephone: (817) 583-7622
                              Facsimile: (817) 796-1063
                              E-mail: gperdue@peritusservices.com

If to Client:                 Southern Auto Finance Company, LLC
                              6700 N Andrews Ave
                              Suite 500
                              Fort Lauderdale, FL 33309
                              Attention: Gary Stein
                              Telephone: 954 745 2503
                              Facsimile: 954 556 9201
                              E-mail: gstein@gosafco.com
</pre>

From time to time, any party, by notice given in accordance with the terms hereof, may change its address for purposes of sending notices hereunder.

(A) This Agreement, including its attachments and any addendums executed hereunder, contains the entire agreement and understanding between the parties with regard to the subject matter hereof, and supersedes all prior and contemporaneous oral or written agreements. No other agreement, statement, or promise relating to the subject matter of this Agreement which is not contained herein shall be valid or binding. No waiver of any provision of this Agreement or any rights or obligations of either party hereunder shall be effective, except pursuant to a written instrument signed by the party waiving compliance, and any such waiver shall be effective only in the specific instance and for the specific purpose stated in such writing.

(B) This Agreement may not be assigned by either party without the express prior written consent of the other party, which consent shall not be unreasonably withheld. Any purported assignment without said consent shall be null and void without any legal force or effect whatsoever. Notwithstanding the foregoing, Peritus may assign this Agreement to an affiliate without Client's consent and may delegate its duties and obligations hereunder to affiliates and Vendors without Client's consent.

(C) If any provision of this Agreement is held to be invalid, illegal or unenforceable by a court of competent jurisdiction, such provision will be deemed restated, in accordance with applicable law, to reflect as nearly as possible the original intentions of the parties, and the remainder of the Agreement will remain in full force and effect.

(D) All provisions hereof relating to proprietary rights, confidentiality and non-disclosure, indemnification and limitation of liability will survive the completion of the Services or any earlier termination of this Agreement.

(E) The section and paragraph headings appearing in this Agreement are inserted only as a matter of convenience and shall not be given any legal effect.

(F) This Agreement shall be governed by and construed under the substantive and procedural laws of the State of Texas without giving effect to the conflicts of law principles thereof.

(G) This Agreement may be executed in counterparts, each of which will constitute an original, and all of which will constitute one agreement. Each party may rely on facsimile signature pages as if such facsimile pages were originals.

*[Signature page follows.]*

IN WITNESS WHEREOF, the parties have executed this Agreement each by its duly authorized officer as of the day and year first above written.

Southern Auto Finance Company, LLC

By: _____

Title: CFO

Date: August 10, 2018

Peritus Portfolio Services LLC

By: _____

Title: President

Date: 8/10/18